[Crim. No. 28260. Second Dist., Div. Three. Nov. 29, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
REYMUNDO FRAUSTO PEREZ, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Jay J. Becker, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Bradley Brunon and Maitland Montgomery, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**COBEY, Acting P. J.**—The People of the State of California appeal from a judgment of dismissal following the grant of a Penal Code section 1538.5 motion by defendant, Reymundo Frausto Perez, to suppress certain evidence (a balloon of heroin). The appeal lies. (Pen. Code, § 1238, subd. (a)(7).)

Defendant was charged with possession of heroin, a violation of Health and Safety Code section 11350. The charge stemmed from a search made by the police incident to booking defendant for violation of Penal Code section 647, subdivision (f)—being drunk in a public place.

## Facts

On August 24, 1975, at approximately 10:15 p.m., uniformed Police Officers Thomas Herman and Carl Tomlinson were on routine patrol when they were waved down by Rosa Duarte, defendant's estranged wife. She was upset and excited and told the officers in broken English that her husband had returned to her home, had argued with her, and had struck her in the face. She asked that the officers come back to her apartment to talk with him.

Officers Herman and Tomlinson were then shown to her apartment, room 303. This opened onto an interior hallway common to all apartments on the third floor of the building. Officer Herman knocked on the door and called out, "Police officers." Defendant opened the door and stepped out into the hallway with an empty whiskey bottle raised above his head. He was unsteady on his feet and his eyes were bloodshot. Officer Herman several times ordered defendant to drop the bottle. Defendant did not comply. Officer Herman determined that defendant was drunk and that he was unable to care for himself.

Defendant stepped toward Officer Herman and tried to swing at him with the bottle, but he missed his target by approximately six inches, staggered and was caught by Herman, who disarmed him. The officers controlled the defendant, handcuffed him and placed him under arrest for being drunk in a public place. He was then taken to the police station for booking.

After booking approval was obtained from a patrol supervisor, a search of defendant's person was conducted at the police station. The search of defendant's pockets revealed a cellophane bag containing a brown substance subsequently identified as heroin in its pure state.

The trial court granted the motion to suppress because it found that defendant had not come into the hallway of his own volition. There is no evidence to support this finding. We may therefore disregard it.[1]

The question remains whether the hallway in which defendant was arrested for being drunk in a public place actually constituted such a

---

[1] In any event, *People* v. *Olson*, 18 Cal.App.3d 592, 594-595 [96 Cal.Rptr. 132], indicates that whether the person under the influence of intoxicating liquor or a drug comes into a public place of his or her own volition is without legal consequence in determining whether that person has violated the subdivision.

place within the meaning of the term "public place" as used in Penal Code section 647, subdivision (f).

## DISCUSSION

As just indicated, prosecution under Penal Code section 647, subdivision (f),[2] is dependent on the accused's being in a public place. Defendant argues that the hallway was not a public place within the meaning of section 647, subdivision (f), and that his arrest was therefore invalid and the subsequent booking search of his person unconstitutional.

In the context of section 647, subdivision (f), California courts have defined a public place variously as "[c]ommon to all or many; general; open to common use" (*In re Zorn,* 59 Cal.2d 650, 652 [30 Cal.Rptr. 811, 381 P.2d 635] (barbershop is a public place); see *In re Koehne,* 59 Cal.2d 646, 649 [30 Cal.Rptr. 809, 381 P.2d 633]); "a place where the public has a right to go and to be . . . . [o]pen to the free and unrestricted use of the public" (*People* v. *Belanger,* 243 Cal.App.2d 654, 657 [52 Cal.Rptr. 660] (inside a parked automobile on a public street is a public place)); and a place where a "stranger . . . was able to walk through the outside area of [a] home to the front door without challenge." (*People* v. *Olson, supra,* 18 Cal.App.3d at 598 (area outside private home, including lawn, driveway or front porch is a public place).)

New York's former public intoxication statute[3] has been construed to define a public place as one where the public has a right to go, not necessarily a place solely for the use of the public, but a place which is merely accessible to the neighboring public. (*People* v. *Soule* (1913) 30 N.Y.Crim. 214 [142 N.Y.S. 876, 880].) In *People* v. *Richardson* (1951) 104 N.Y.S.2d 336, 339, a defendant who used abusive language and threats

---

[2]Section 647, subdivision (f), reads in relevant part:
"Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

". . . . . . . . . . . . . . . . . . . .

"(f) Who is found in any public place under the influence of intoxicating liquor, any drug, . . . in such condition that he is unable to exercise care for his own safety or the safety of others . . . ."

[3]New York Penal Law section 240.40, subsequently amended, stated:
"A person is guilty of public intoxication when he appears *in a public place* under the influence of alcohol, narcotics or other drug to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

"Public intoxication is a violation." (Italics added.)

against a neighbor in violation of the disorderly conduct statute[4] in the interior hallway of their multiple unit dwelling was held to have committed a breach of the peace and the hallway held to be a public place within the context of the statute. Hallways of multiple unit dwellings have also been considered public places within a trespass statute. (*People* v. *Beltrand* (1970) 314 N.Y.S.2d 276, 283.)

■ The hallway in this case is the kind of public place contemplated in the California and New York cases. There were no locked gates or doors to keep the public from entering. Hallways and stairways of multiple dwellings are open to delivery men, service men, solicitors, visitors and other strangers, whether those hallways are interior or exterior to the buildings,[5] and are therefore public places within the meaning of section 647, subdivision (f). In other words, a "public place" within the meaning of this subdivision is a location readily accessible to all those who wish to go there rather than a place which the general public frequents.

The judgment of dismissal is reversed.

Allport, J., and Potter, J., concurred.

---

[1]New York Penal Law Section 240.20 states in pertinent part:

"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:

"…

"3. *In a public place,* he uses abusive or obscene language, or makes an obscene gesture". (Italics added.)

[5]There is no requirement in subdivision (f) that the place be "exposed to the public view." This language is included only in subdivision (a), prohibiting solicitation of lewd or dissolute conduct—"in any public place or in any place open to the public or exposed to public view."