[No. F013008. Fifth Dist. Feb. 15, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS REESE WHITE, Defendant and Appellant

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Michael Freund, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Clayton S. Tanaka and Alan Ashby, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARTIN, J.**—On June 30, 1989, an information was filed in the Kern County Superior Court against appellant Thomas Reese White, alleging a

violation of Penal Code section 245, subdivision (b),[1] as it provided in 1989, for assaulting a peace officer with a deadly weapon, other than a firearm, to wit: a glass container (count I); battery causing injury when the appellant knew or should have known the victim was a peace officer engaged in the performance of his duties in violation of section 243, subdivision (c) (count II); resisting an executive officer in the performance of his duties by force and violence in violation of section 69 (count III); possession of a switch-blade knife having a blade over two inches in length in violation of section 653k (count IV); and unlawful public intoxication in violation of section 647, subdivision (f) (count V).

The information was amended on August 30, 1989, which added an enhancement allegation to count I pursuant to section 667.

A jury trial commenced on August 28, 1989, and on September 5, 1989, the jury convicted appellant as charged on counts III, IV, and V. As to count I, a guilty verdict was returned alleging assault on a peace officer in violation of section 241, subdivision (b), a misdemeanor, a lesser included offense. As to count II, a guilty verdict was returned alleging battery on a peace officer in violation of section 243, subdivision (b), a misdemeanor, a lesser included offense. The jury was dismissed without further reference to the enhancement allegation of the amended information.

On October 12, 1989, the court found, in sentencing appellant, unusual circumstances existed in the case justifying a grant of probation. Three years' probation was granted on conditions which included a one-year sentence to county jail as to counts I through IV and a six-month jail sentence as to count V, all terms to run concurrently.

This appeal follows.

## FACTS

On June 4, 1989, at approximately 11:45 p.m., Deputy Francis Moore of the Kern County Sheriff's Department was dispatched to Valencia Street in Bakersfield. He was informed by the dispatcher that a report had been received that someone in a gray van was screaming and trying to get out of the vehicle. Five minutes later he arrived at 2619 Valencia Street where he observed a gray van which he believed was the subject of the report. Deputy Moore was in uniform in a marked vehicle. Appellant, his wife and brother were outside the van and appellant and his wife were arguing. Deputy Moore spoke with appellant's wife apart from the other two persons, and

[1] All statutory references are to the Penal Code unless otherwise indicated.

she advised him that appellant had been drinking and that she and appellant had had an argument. Deputy Moore then attempted to speak with appellant, who was on the front porch of the residence.

Appellant refused and used insulting language in doing so. Deputy Moore repeated his request and appellant responded in a similar fashion. On the third request appellant opened the door of his house and released dogs into the yard, cursing and yelling. Appellant said Deputy Moore would have to come into the yard to speak with him and Moore replied that he would not enter the yard because of the dogs. Finally, appellant stepped near the fence. The fence was approximately three and one-half feet high and had an unlocked gate. The deputy asked appellant to come outside the fence and appellant refused.

Appellant rested his arms on the fence holding a filled glass container in both hands. The glass contained a mixed alcoholic drink. Deputy Moore "cupped" appellant's hands and attempted to guide him to the gate. Appellant swung back, hit the deputy's hand lightly, and Deputy Moore grabbed appellant's arm. Appellant then threw his drink into the deputy's face. The deputy held appellant because he had determined at that point to place appellant under arrest and was not attempting to pull him over the fence. The deputy was struck behind his left ear with a glass container. Appellant retreated into the house. After a struggle, appellant was subdued by Deputy Moore and three other officers who had arrived to provide backup support.

After appellant's arrest, a patdown search was conducted of his person. An illegal butterfly knife was found in his right front pants pocket.

Appellant was taken to a hospital after his arrest and stated in the presence of Deputy Moore that he had thrown his drink in the officer's face and struck him on the head because he was "pissed off" at him.

Appellant testified that on the night of June 4, 1989, appellant had had an argument with his wife, which was over when Deputy Moore arrived. At that time Mrs. White told the officer, who was standing outside the house gate, that everything had calmed down and that there was no longer a problem.

Appellant was inside the house at the time. He eventually came down to the gate holding a mixed alcoholic drink in a glass container. Moore became adamant and in a very intimidating manner demanded that appellant and his wife come outside the gate. Appellant refused. When appellant approached the gate, the officer initiated physical contact with him by grabbing his wrists, attempting to pull appellant over the fence. The drink fell

out of appellant's hands and some spilled on the officer. Appellant denied throwing the glass at the officer. Prior to the officer's aggressive action, appellant did not make any physical contact with Deputy Moore. The officer's action caused appellant to slam into the fence which produced several bruises on appellant's body.

Appellant turned away from Deputy Moore and walked quickly toward the house. The officer threatened to shoot. Appellant ignored the warning and entered the house. Appellant's daughter, Becky, closed the door and locked it. Deputy Moore, together with a group of officers, knocked down the front door. The officers then entered the house and restrained appellant. Deputy Moore hit appellant with his baton which caused bruises and pain to appellant's leg sufficient to require a hospital visit. In the house, appellant stood there without struggling and told the officers to leave his family alone.

Appellant claimed that he had two alcoholic drinks at home around dinner time. He denied taking any sort of narcotic substance that day, including "speed." Appellant and various other witnesses denied that appellant was intoxicated.

## DISCUSSION

### I. Appellant's Front Yard as a Public Place

■ Appellant contends that he cannot be convicted of section 647, subdivision (f) since he was not found in a public place.

A person is guilty of disorderly conduct pursuant to section 647, subdivision (f) if he or she:

". . . is found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in such a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way."

The question then is whether or not appellant's yard was a "public place" within the meaning of section 647, subdivision (f). The record indicates it was surrounded by a fence about three and one-half feet high which included an unlocked gate.

Jurors were given a special instruction which consisted of a modified version of the third paragraph of CALJIC No. 16.431, as follows:

"Now, the front area outside a person's home is a public place, where the area is open to some common or general use so that a complete stranger is able to walk through the outside area to the front door of the home without challenge."

Appellant relies principally on the case of *In re Koehne* (1963) 59 Cal.2d 646 [30 Cal.Rptr. 809, 381 P.2d 633], in which the defendant was found lying in an intoxicated state on a private driveway exposed to public view. The court held that intoxication in a place which is not a public place but is exposed to public view is not criminal. The court reasoned that subdivision (f) of section 647 is distinguishable from subdivision (a) of the section which was enacted at the same time. Subdivision (a) specifically prohibits "lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view." Also, subdivision (c) prohibits begging in "any public place or in any place open to the public." In contrast, subdivision (f) only prohibits intoxication in a "public place" and does not prohibit it in places exposed to public view. (*In re Koehne, supra,* 59 Cal.2d at p. 649.)

Respondent submits that appellant's reliance on *In re Koehne, supra,* is misplaced because the language is dictum and because the court in that case did not reach the public access analysis of later opinions.

In decisions subsequent to *Koehne,* respondent argues, courts have established that a "public place" for purposes of the statute is not necessarily public property, but an area where a member of the public may be lawfully present. Thus, in a case issued contemporaneously with *Koehne* a barbershop was held to be a public place because it is, in part, "open to common use." (*In re Zorn* (1963) 59 Cal.2d 650, 652 [30 Cal.Rptr. 811, 381 P.2d 635].)

In *People v. Perez* (1976) 64 Cal.App.3d 297 [134 Cal.Rptr. 338], the police, in investigating a domestic quarrel, knocked on an apartment door, and the defendant opened the door and stepped out into the hallway carrying a whiskey bottle while behaving in an intoxicated manner. The court upheld the arrest based on the defendant's voluntary entry into a public hallway. The court stated:

"There were no locked gates or doors to keep the public from entering. Hallways and stairways of multiple dwellings are open to deliverymen, servicemen, solicitors, visitors and other strangers, whether those hallways are interior or exterior to the buildings [], and are therefore public places

within the meaning of section 647, subdivision (f). In other words, a 'public place' within the meaning of this subdivision is a location readily accessible to all those who wish to go there rather than a place which the general public frequents." (64 Cal.App.3d at p. 301, fn. omitted.)

In *People* v. *Olson* (1971) 18 Cal.App.3d 592 [96 Cal.Rptr. 132], the case relied upon by the trial court for the special instruction defining "public place," the Second District Court of Appeal was called upon to determine whether an arrest which occurred in front of a private residence could be deemed to have occurred in a public place. The court stated:

"As to the area outside in the front of [the witness's] house, whether it be the driveway, lawn or front porch, it was a public place within the meaning of section 647, subdivision (f) . . . . Inasmuch as defendant, a complete stranger to [the witness], was able to walk through the outside area of her home to the front door without challenge, it can hardly be denied that the area is open to 'common' or 'general use.'" (18 Cal.App.3d at p. 598.)

Appellant seeks to distinguish the *Olson* case factually from the instant case on the basis that appellant herein was not a stranger to the property, but rather an occupant who has a legally recognizable property interest. We also note that the factual analysis of *Olson* did not mention a fence or gate of any kind. The *Olson* opinion did not mention or discuss the case of *Koehne* or its analysis of section 647, subdivision (f).

Whether a particular location is a "public place" depends upon the facts of the individual case. (*People* v. *Belanger* (1966) 243 Cal.App.2d 654, 657-659 [52 Cal.Rptr. 660] [defendant found intoxicated inside a private automobile parked along public street curb deemed arrested in a public place].) Appellant herein was located in his own front yard surrounded by a three-and-a-half-foot-high fence with a gate which was unlocked at the time. The gate was not standing open. Deputy Moore opened it. Appellant released three dogs into the yard, which from all appearances acted as an effective if unintentional deterrent to the arresting officer.[2] This fenced yard cannot be characterized as a "public place," i.e., "common to all or many; general; open to common use." (*In re Zorn, supra*, 59 Cal.2d 650, 652.) In contrast to *Olson*, the fence, gate and dogs all provided challenge to public access. Appellant may have been found intoxicated in a place exposed to public

---

[2] Appellant's wife testified that one of the three dogs was an arthritic collie, 10 years of age. She described the dog as a "loving," nonvicious dog. The other two belonged to appellant's brother who had lived at appellant's residence less than three weeks before the incident in question. Appellant's wife testified they were kept outside because of a bad tick problem in the area.

view but that, in and of itself, is not a violation of section 647, subdivision (f). (*In re Koehne, supra*, 59 Cal.2d 646, 648-649.)

## II., III.*

. . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed as to count V and affirmed in all other respects. The trial court is directed to prepare and file an amended abstract of judgment striking the imposed but concurrent sentence on count V.

Best, P. J., and Dibiaso, J., concurred.

---

*See footnote, *ante*, page 886.