Because I would interpret "public place" to include both the common areas in an apartment building as well as the parking lot attached to the apartment building, I respectfully dissent.
The majority determines the meaning of "public place" for purposes of open container laws by defining "private place." The majority's analysis turns on whether the evidence can establish that the privately owned parking lot and the apartment's common areas were truly private — was "the public at large * * * invited to either enter, remain on and/or cross the property." In support, the majority relies upon State v. VanDyne (1985), 26 Ohio App.3d 95, Pruneyard Shopping Center v. Robins
(1980), 447 U.S. 74, 64 L.Ed.2d 741, Hudgens v. National Labor RelationsBoard (1976), 424 U.S. 507, 47 L.Ed.2d 196, and Lloyd Corp., LTD v.Tanner (1972), 407 U.S. 551, 33 L.Ed.2d 131. I find only Van Dyne
applicable. None of the other authorities define public place or concern anything related to open container laws.
In Pruneyard, supra, the United States Supreme Court sustained a statelaw requiring the proprietors of shopping malls to allow visitors to
solicit signatures on political petitions without a showing that theshopping mall owners would otherwise prevent the beneficiaries of the lawfrom reaching an audience. The Court found that the proprietors wererunning "a business establishment that is open to the public to come andgo as they please," that the solicitations would "not likely beidentified with those of the owner," and that the proprietors could"expressly disavow any connection with the message by simply postingsigns in the area where the speakers or handbillers stand." Id., at 87.In Lloyd, supra, the United States Supreme Court found that when ashopping center owner opens his private property to the public for thepurpose of shopping, the First Amendment to the United States Constitutiondoes not thereby create individual rights in expression beyond thosealready existing under applicable law. See also Hudgens, supra (holdingthat a private person may exclude certain speakers from his or her property without violating the First Amendment).
In Van Dyne, supra Chief Justice Moyer, then an appellate judge writing for the Tenth District, examined whether a sidewalk constitutes a public place for purposes of Ohio's open container statute — the statute upon which Green's ordinance is based. Relying upon the United States Supreme Court's finding in United States v. Grace (1983), 461 U.S. 171, wherein the Court held that a sidewalk outside the United States Supreme Court building is a public place for First Amendment purposes, the Tenth District Court held that for purposes of Ohio's open container laws, a sidewalk is a public place.
Dismissing Van Dyne's argument that "there is no threat to the health, safety, morals or general welfare of the public posed by a single person standing on a public sidewalk several feet from his home with an opened can of beer[,]" Chief Justice Moyer, again, writing as an appellate judge, explained the underlying purposes of Ohio's open container statute:
 The interest of the state in controlling the possession and consumption of alcohol is well-established. The state's interest in regulating possession of opened containers of alcohol in public places, while perhaps not as compelling, is similar to the state's interest in regulating the possession of thievery tools, concealed weapons, and scheduled substances. While the possession of an opened can of beer by defendant in this case perhaps posed no threat to public health or safety, it is the possibility of abuse of the substance in his opened container by others, and his potential abuse of the substance, that gives the state its right to regulate his conduct in a public place. This is the price which he pays for living in a society in which the misconduct of some affects the freedom of us all. The state has a legitimate interest in controlling the places in which people may possess opened containers of liquor or beer.
Van Dyne, supra, at 96-97.
I believe the proper analysis should concern what constitutes a "public place," as opposed to what is "private." "Generally speaking, a public place is a place or area where the public, as a whole, has a right to be. It is usually a place accessible or visible to all members of the community." Annotation, Location of Offense as "Public" Within Requirement of Enactments Against Drunkeness (1966), 8 A.L.R.3d 930, fn. 1. An open apartment driveway and parking area, with no evidence of a locked or gated parking area, which is open to all comers must be viewed as a public place. Although this Court is not bound by the Ohio Revised Code in this case as a local ordinance is at issue, this conclusion is in line with rules of statutory construction such as: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.
In looking at rules of statutory construction, and applying a common sense definition of the term "public place," an open apartment parking lot and driveway is a place where the public has a right to be, that is accessible and visible to all. In Webster's New Collegiate Dictionary (1979) 925, "public" is defined as "a place accessible or visible to the public." The term "place" is defined as a "physical environment: space." Webster's New Collegiate Dictionary (1979) 869. Here, the apartment parking lot and common area were spaces accessible and visible to the public. Therefore, appellee was properly found to be in a public place. This conclusion is consonant with the common sense notion that apartment parking areas, driveways, and unlocked lobbies and stairwells are public places apart from privately owned or leased premises.
The Van Dyne court also employed a common sense approach to the definition of public place: "By most people, a sidewalk, which is the means by which pedestrians walk across private property, is considered to be a public place." This direct reasoning applies with equal force to this case. Like a sidewalk, the open parking lot and common areas are open to the public. The public character of an apartment parking lot is different than that of a private residence as it is not specifically owned by lessors, but rather is a shared common area.
In Curtin v. State (Md.App. 1983), 483 A.2d 81, 85, certiorari denied (1985) 302 Md. 409, the court applied the ordinary definitions of "public" and "place" and concluded that the parking lot of an apartment complex was a public place for purposes of a statute proscribing consumption of alcohol in a public place.
Along these same lines, the hallway of an apartment building has been recognized as a "public place" within contemplation of a law prohibiting being under the influence of alcohol or drugs in a public place. Peoplev. Perez (Cal.App. 1976), 64 Cal.App.3d 297, 301.
 The hallway in this case is the kind of public place contemplated in the California and New York cases. There were no locked gates or doors to keep the public from entering. Hallways and stairways of multiple dwellings are open to delivery men, service men, solicitors, visitors and other strangers, whether those hallways are interior or exterior to the buildings, and are therefore public places within the meaning of [the statute proscribing drunkenness in a public place]. In other words, a "public place" within the meaning of this subdivision is a location readily accessible to all those who wish to go there rather than a place which the general public frequents.
(Footnote omitted.) Id.
For the foregoing reasons, I would affirm the decision of the trial court.