[No. C056541. Third Dist. Mar. 21, 2008.]

In re R.K., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
R.K., Defendant and Appellant.

## Counsel

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Janis Shank McLean and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ROBIE, J.**—A deputy sheriff finds an intoxicated minor in a woodshed located 10 to 15 feet from the side of a house. The minor complies with the deputy's requests to come out of the shed and to the street. A juvenile court finds true an allegation that the minor violated Penal Code section 647, subdivision (f) (section 647(f)) for being "found in any public place under the influence of intoxicating liquor." Can the true finding stand, either because the woodshed was a "public place" or because the minor ended up in a "public place" when he complied with the deputy's requests to come out of the shed and to the street? The answer to these questions is "no." We therefore reverse the judgment against the minor R.K.

### FACTUAL AND PROCEDURAL BACKGROUND

A juvenile petition was filed against the minor for disorderly conduct in violation of section 647(f). That section penalizes as a misdemeanor a person who is "found in any public place under the influence of intoxicating liquor . . . in a condition that he . . . is unable to exercise care for his . . . own safety or the safety of others, or by reason of his . . . being under the influence of intoxicating liquor . . . interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way."

At the jurisdictional hearing, the prosecutor presented the following testimony from Plumas County Sheriff's Deputy Matthew Beatley as proof of the allegation:

Around midnight on a Friday in March 2007, Deputy Beatley arrived at the corner of a residential neighborhood in Quincy where he saw two juveniles walking away from a house.[1] Deputy Beatley "attempted contact" with anyone who might be inside the house, but all the doors were locked and the lights were turned off. He walked around to the west side of the house to a woodshed that was about 10 to 15 feet from the house. He heard noises coming from inside. When he shined a flashlight inside, he saw the minor and another juvenile. The minor smelled strongly of alcohol, his eyes were red and watery, his speech was slurred, and he was unsteady on his feet. The minor admitted he had drunk "[a] lot" that evening.

Deputy Beatley believed the minor was incapable of "attending to his own safety." Although it was a "[r]eal cold" night with a foot of snow on the ground, the minor was wearing "just . . . pants and a T-shirt" and it looked as though he had nowhere to go.

Deputy Beatley asked the minor to come out of the shed, and the minor complied. Deputy Beatley then asked him to "come out to the street" next to the patrol car, and again the minor complied. The minor was issued a citation and released to his parents, who were called to the scene.

After Deputy Beatley's testimony, the court asked for argument.

The prosecutor responded as follows: "Um, well[, the minor] has a right to a jurisdictional hearing, and that's the best I can come up with.˙ [¶] It's the first time we've had jurisdictional hearings with [the minor]. Who knows if it will be the last. I find myself frustrated by the situation where most kids just—he admitted to drinking. He's out in the snow in a T-shirt in a wood shed [*sic*] at midnight, some impaired gait, some impaired speech, red and watery eyes. He's what, 16, 17—17—that's a 6[4]7(f) . . . . [¶] Otherwise, if the Court wants, if it's the belief of everyone else in the courtroom that he's free of crime, then that's fine, too."

When the court asked the prosecutor to "address the public place aspect of it," the prosecutor responded as follows: "It might be—that he's out in a wood shed [*sic*], presumably on private property, with another guy who we

---

[1] Although not part of Deputy Beatley's testimony, the incident report written by the deputy explained he went to the house in response to a call "regarding juveniles drinking alcohol." The juveniles walking away from the house told Deputy Beatley they were 17 years old and were leaving a party.

don't know who owns the house. It might be. Not a bad issue. And whether or not an officer has a duty in that situation to respond such that he brings the minor—the child, if you will, out to the—out to the public place, that he then finds himself on, whether that somehow exonerates him of the crime, or whether or not there's circumstantial evidence that he would shortly be in a public place. If the Court rules that the wood shed [*sic*], or right outside the wood shed [*sic*] wasn't a public place, those are open questions. [¶] And again, frankly, [the minor]'s drinking problem should probably not go much further with the court system in Plumas County. . . ."[2]

The court found sufficient evidence to sustain the allegation of violating section 647(f), explaining the following "[w]ith regard to the public place" issue: "[A]lthough the Officer either asked him to come out or told him to come out of the shed . . . the minor apparently came out willingly. There was no evidence that he had to be dragged out of the shed. The officer then moved him out to the street. So I'm going to . . . find that that was in a public place."

## DISCUSSION

The minor contends there was insufficient evidence to sustain the court's true finding that he violated section 647(f) because, in the minor's view, he was not "found in any public place." He argues that the woodshed was not a "public place" and that the deputy's actions compelling him to come to a "public place" cannot satisfy the statutory requirement. We agree there was insufficient evidence to sustain the true finding because the minor was not "found in any public place."[3]

I

*The Woodshed Was Not a "Public Place"*

California courts have defined a "public place" within the meaning of section 647(f) variously depending on the facts of the case. (*People v. Perez* (1976) 64 Cal.App.3d 297, 300 [134 Cal.Rptr. 338] (*Perez*).) In one of the earlier cases defining the term, our Supreme Court concluded that a barbershop was a "public place" "for the reason that 'public' has been defined as ' "[c]ommon to all or many; general; open to common use," ' and ' "[o]pen to common, or general use, participation, enjoyment, etc. . . ." ' " (*In re Zorn* (1963) 59 Cal.2d 650, 652 [30 Cal.Rptr. 811, 381 P.2d 635] (*Zorn*).)

---

[2] At the beginning of the jurisdictional hearing, the prosecutor stated that he "th[ought] this case merit[ed] as little County resources as possible."

[3] Given our holding, we will not address the minor's other argument that there was insufficient evidence he was "unable to exercise care for his . . . own safety . . . ." (§ 647(f).)

The *Zorn* definitions were used and expanded on in several cases dealing with defendants found intoxicated near private residences.

In one such case, Division Three of the Court of Appeal, Second Appellate District held that a hallway of an apartment building was a "public place." (*Perez, supra,* 64 Cal.App.3d at pp. 299–300, 301.) There, two police officers went to the defendant's front door in response to a call from the defendant's wife that he had struck her in the face. (*Id.* at p. 299.) One officer knocked on the door and called out, " 'Police officers.' " (*Ibid.*) The "[d]efendant opened the door and stepped out into the hallway with an empty whiskey bottle raised above his head." (*Ibid.*) He appeared intoxicated, did not comply with the officer's orders to drop the bottle, and tried to swing at the officer with the bottle. (*Ibid.*) He was arrested for violating section 647(f) but prosecuted for and convicted of possessing heroin that was found in his pockets when he was being booked. (*Perez,* at pp. 298–299.) The appellate court reversed the judgment of dismissal that had been based on the trial court's grant of the defendant's motion to suppress evidence. (*Id.* at pp. 299, 301.) In explaining why the hallway was a "public place," the appellate court noted the *Zorn* definitions and stated "[t]here were no locked gates or doors to keep the public from entering" and "[h]allways and stairways of multiple dwellings are open to delivery men, service men, solicitors, visitors and other strangers . . . . In other words, a 'public place' . . . is a location readily accessible to all those who wish to go there rather than a place which the general public frequents." (*Perez,* at pp. 300–301.)

In two cases in which the defendants were in the front yards of private residences, the Courts of Appeal reached different conclusions as to whether they were found in a "public place," again using and expanding the *Zorn* definitions.

In the first front yard case, Division One of the Court of Appeal, Second Appellate District applied the *Zorn* definitions of a "public place" to find that police had reasonable cause to believe that an intoxicated defendant had violated section 647(f) in front of a house. (*People v. Olson* (1971) 18 Cal.App.3d 592, 596–598 [96 Cal.Rptr. 132] (*Olson*).) There, the defendant rang the doorbell of a stranger's home, and the owner let her in to make a telephone call. (*Id.* at p. 594.) The defendant ended up falling asleep at the kitchen table, and the owner called police to get help for the defendant. (*Id.* at pp. 594–595.) The police arrived, helped the defendant regain consciousness, asked her to step out of the house, and once outside, determined she was intoxicated. (*Id.* at p. 595.) They arrested her for violating section 647(f) and transported her to the police station where she was booked. (*Olson,* at p. 595.) During the "booking-searching procedure," two bindles of heroin were found in her purse. (*Ibid.*) The appellate court affirmed the trial court's

denial of the defendant's motion to suppress evidence. (*Id.* at pp. 595, 598.) The appellate court explained, "As to the area outside in the front of [the] house, whether it be the driveway, lawn or front porch, it was a public place within the meaning of section 647, subdivision (f). . . . Inasmuch as defendant, a complete stranger to [the owner], was able to walk through the outside area of her home to the front door without challenge, it can hardly be denied that the area is open to 'common' or 'general use.' " (*Olson,* at p. 598.)

In the second front yard case, the Fifth Appellate District also relied on the *Zorn* definitions but distinguished *Olson* because the defendant "was located in his own front yard surrounded by a three-and-a-half-foot-high fence with a gate which was unlocked" but closed and into which he "released three dogs." (*People v. White* (1991) 227 Cal.App.3d 886, 892 [278 Cal.Rptr. 48] (*White*).) The *White* court held that the fenced yard could not "be character-ized as a 'public place,' i.e., 'common to all or many; general; open to common use.' (*In re Zorn, supra,* 59 Cal.2d 650, 652.) In contrast to *Olson,* the fence, gate and dogs all provided challenge to public access. [The defendant] may have been found intoxicated in a place exposed to public view but that, in and of itself, is not a violation of section 647, subdivi-sion (f)." (*White,* at pp. 892–893.)

In light of these definitions, there was insufficient evidence that the woodshed here qualified as a "public place." The People presented no evidence the woodshed was " ' "open to common use," ' " or to " ' "general use, participation, enjoyment, etc. . . ." ' " (*Zorn, supra,* 59 Cal.2d at p. 652.) While they claim they did, in the form of Deputy Beatley's testimony that he was able to walk to the woodshed undeterred and shine a flashlight inside, they fail to point out that Deputy Beatley went to the woodshed around midnight after he saw that the house was dark and heard no answer at the front door. Simply because the deputy was able to access the woodshed one time under these limited conditions by no means established that the wood-shed was " ' "open to common use," ' " or to " ' "general use, participation, enjoyment, etc. . . ." ' " (*Zorn,* at p. 652.) The People's argument also fails because of the qualitative difference between a woodshed at the side of a house and areas outside of the front of a house such as driveways, lawns, or front porches (*Olson, supra,* 18 Cal.App.3d at p. 598) or hallways or stairways of multiple-dwelling residences (*Perez, supra,* 64 Cal.App.3d at p. 301) that are "public place[s]." These latter areas are "open to delivery men, service men, solicitors, visitors and other strangers" (*Perez,* at p. 301) because people traverse those areas to park their cars, deliver items to a house, or access a front door. A woodshed shares none of these attributes or the other attributes common to "public places." That there might have been no doors on the woodshed, or fences, gates, or dogs adjacent to the area where the woodshed was located, was irrelevant. Unlike areas outside the

front of a home such as driveways, lawns, or front porches that are as a general matter "open to 'common' or 'general use' " (*Olson*, at p. 598) for which a homeowner might need fences, gates, or dogs to deter public access (*White, supra*, 227 Cal.App.3d at p. 892), a woodshed located 10 to 15 feet to the side of a house needs no barrier to establish that it is not open to common or general use. As such, the woodshed here was not a "public place" within the meaning of section 647(f).

## II

*The Minor's Compliance with the Deputy's Requests to*
*Come Out of the Woodshed and to the Street Did Not*
*Constitute a Violation of Section 647(f)*

Regardless of whether the woodshed was a "public place," the People argue that the court's finding of a section 647(f) violation can stand because the minor "voluntarily followed Deputy Beatley out to the public street." In support of their position, they cite *Olson* and *Perez*. The minor argues that because he was "compelled to leave the privacy of the woodshed" by the deputy's "command[s]," he was not "found in any public place." In support of his position, he cites *In re David W.* (1981) 116 Cal.App.3d 689 [172 Cal.Rptr. 266] (*David W.*). As we will explain, whether the minor came to the street because the deputy requested him to do so or because the deputy compelled him to do so is immaterial; in either situation, the minor was not "found in any public place" within the meaning of section 647(f).

▇ We have already discussed the facts of *Olson* and *Perez* and need not repeat them. What is pertinent here is that the trial court in *Perez* granted the defendant's motion to suppress the evidence because it found that "defendant had not come into the hallway of his own volition," and the appellate court "disregard[ed]" the court's finding because there was "no evidence to support [it]." (*Perez, supra*, 64 Cal.App.3d at p. 299.) In dictum, the appellate court stated, "In any event, [*Olson*] indicates that whether the person under the influence of intoxicating liquor or a drug comes into a public place of his or her own volition is without legal consequence in determining whether that person has violated the subdivision." (*Perez*, at p. 299, fn. 1.)

This dictum was explained in *David W.*, where Division Five of the Court of Appeal, Second Appellate District distinguished *Olson* and *Perez* and reversed a true finding that the minor had violated section 647(f). (*David W., supra*, 116 Cal.App.3d at pp. 693–694.) There, police officers responded to a mother's call that her minor son possibly was under the influence of a drug, he could not care for himself, and someone might get hurt. (*Id.* at p. 691.) When officers arrived at her home, the mother directed them to the minor's

bedroom where the minor was violently attacking his brother and appeared to be under the influence of a drug. (*Ibid.*) The officers handcuffed the minor, escorted him to the police car while he cursed at them, and took him to a hospital. (*Ibid.*) Drugs were discovered in the minor's boots when the doctor ordered them removed in preparation for a medical procedure. (*Ibid.*) The officers then arrested the minor for drug possession, but he was charged with a violation of section 647(f). (*David W.*, at p. 692.) In reversing the juvenile court's true finding of a violation of section 647(f), the appellate court explained that the officers found the minor "in a bedroom of his own home, which is manifestly not a public place" and he "came to be in a public place, to wit, the sidewalk in front of his home and the police vehicle en route to the hospital, only because he was taken there by the police while handcuffed and while apparently resisting at least to the extent of cursing the officers." (*Ibid.*) The court further explained that while it was true the officers acted properly in taking the minor into custody and transporting him to the hospital at his mother's request and for his own benefit, "this fact should not justify [the minor]'s prosecution for a crime he did not voluntarily commit." (*Id.* at p. 692.) "[T]he fact remains that he was compelled by the police officers to go to a public place." (*Id.* at p. 692, fn. omitted.)

The *David W.* court found *Olson* and *Perez* "qualitatively different." (*David W., supra*, 116 Cal.App.3d at p. 693.) "In *Olson* the defendant had originally been in a public place and although she had been given temporary refuge in someone else's home, she had no business remaining there when the home owner's consent was withdrawn. . . . In *Perez* the defendant voluntarily stepped into the public hallway and the comment made by the appellate court was dictum." (*David W.*, at p. 693.) The *David W.* court also found it significant that both the defendants in *Olson* and *Perez* were arrested for a violation of section 647(f) but were prosecuted for a different crime that was discovered upon booking. (*David W.*, at p. 694.) In view of this fact, the *David W.* court interpreted the *Perez* dictum to mean "that regardless of how an intoxicated person comes to be in a public place, the police must necessarily have the authority to arrest and remove that person from the public place in order to protect both the offender and the public." (*David W.*, at p. 694.) It then noted that even if "such an arrest is proper does not necessarily mean a conviction is proper." (*David W.*, at p. 694.)

Here, we too distinguish *Olson* and *Perez*[4] on these grounds, but go a step further. In our view, the distinction between an intoxicated person who is found somewhere other than in a "public place" and who is *forcibly removed* by police to a "public place" and a similarly situated person who *voluntarily acquiesces* to go to a "public place" at the police's request is irrelevant in

---

[4] To make clear, the defendant in *Perez* stepped into the hallway on his own, not in response to the officer's invitation or command to do so. (*Perez, supra*, 64 Cal.App.3d at p. 299.)

determining whether the person can be found in violation of section 647(f). Drawing such a distinction, as the People would have us do, would encourage people to defy legitimate requests or commands of law enforcement. We therefore hold that an intoxicated person who is found somewhere other than a "public place" (and it is not shown that the person has no right to be there) but who acquiesces in the police's request to accompany the officer to a "public place" cannot be found in violation of section 647(f) based solely on the person's presence in that "public place." Such was the case here.

## DISPOSITION

The judgment is reversed.

Sims, Acting P. J., and Butz, J., concurred.