Filed 11/7/14  In re Jonathan O. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

<table>
<tr><td>In re Jonathan O., a Person Coming Under the Juvenile Court Law.</td><td></td></tr>
<tr><td>THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN O.,<br><br>     Defendant and Appellant.</td><td>A141982<br><br>(San Mateo County<br>Super. Ct. No. 79057)</td></tr>
</table>

**INTRODUCTION**

We are asked to review an appeal from the juvenile delinquency court where appellant was charged with a violation of Penal Code section 647, subdivision (f), and the petition was sustained.  Appellant raises two issues: (1) the offense did not take place in a public place, and (2) his inability to care for himself was not proven beyond a reasonable doubt.  We have reviewed the case and we now affirm.

**STATEMENT OF THE CASE**

On July 10, 2013, the San Mateo District Attorney filed a petition pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging appellant committed misdemeanor disorderly conduct by being found in a public place under the influence and in such a state that he could not exercise care for his own safety or the safety of others. (Pen. Code, § 647, subd. (f).)  The juvenile court conducted a contested hearing on April 3, 2014, and sustained the petition.  On May 19, 2014, the court declared the minor a

1

ward of the court and placed him on probation in the home of his parents. A timely notice of appeal was filed on May 29, 2014.

## STATEMENT OF FACTS

Officer Joseph Freitas is a member of the Redwood City Police Department. He is trained in observing the symptoms of a person being under the influence of alcohol and drugs. He had been a police officer for approximately 13 years at the time of appellant's arrest and had confronted people under the influence on numerous instances during that period.

On March 1, 2014, approximately 9:34 p.m., Freitas was on routine patrol in downtown Redwood City. He was dispatched to a parking lot where it was reported numerous youths were drinking. The site was located beneath a private building at 650 Main Street. This building is a medical and counseling center called the Sequoia Center. The sign in the parking lot in issue indicated the spaces were reserved for staff parking. However, the sign also indicated that, pursuant to Vehicle Code section 22658, subdivision (a), the owner may tow any unauthorized cars in the lot. Also, there were no gates or structures that precluded anyone from entering the lot from outside. To enter and investigate, Freitas only had to drive his patrol car from the street into the lot.

Upon arrival, Freitas observed two juveniles already detained by other officers. Only one car was parked in the lot. Freitas saw tables and chairs along with several bottles of liquor and beer in the area. A number of the bottles still contained liquor or beer. He also saw appellant and a female teenager walking down the sidewalk on Main Street. Appellant had an unsteady gait. Appellant walked into the parking lot where the other youths had already been detained. His eyes were bloodshot. The closer Freitas got to appellant, the more he noticed the odor of alcohol on the minor and determined his speech was slurred.

The officer asked appellant what he doing in the lot. The minor responded he had come to check his car. Appellant indicated he had parked his car in the lot so he and his

2

girlfriend could attend the movies. Appellant's car was in the area of the lot where the several bottles of beer and hard liquor were found. Freitas asked appellant if he had been drinking any alcohol. Though he replied he had not, Freitas did not believe him based on his observed condition.

Officer Freitas was concerned appellant might decide to drive the car and have the girlfriend be a passenger in it. If the officer's belief was correct, this would endanger both the minor and his companion. Based on appellant's symptoms and demeanor, Freitas placed him under arrest because the officer believed the minor was unable to care for his own safety or that of his friend. He relied on the objective features of alcohol intoxication, the fact the appellant had the car keys in his possession, and the conclusion the minor did not agree with Freitas's belief appellant should not drive the car.

Officer Daniel Valencia was also trained in making decisions regarding sobriety. He went to the parking lot at the same time Freitas did. He understood a party was going on at the lot. He drove into the property and saw several teens running away. Valencia noticed at the site that appellant was arguing with another officer. The level of conversation was becoming such that Valencia believed he needed to assist. Appellant was now arguing with Sergeant Price, a third officer who had arrived. Valencia heard appellant say he was going to drive his car and take his girlfriend for a ride. While the minor said he had just left the movies, he could not identify the film he saw.

Valencia noticed appellant had bloodshot eyes, slurred speech, and the "strong" odor of alcohol. The officer administered a preliminary alcohol screening (PAS) test to the minor, which resulted in a reading of 0.125 percent blood-alcohol concentration. All these facts considered, Valencia believed the minor was under the influence and could not care for himself or others.

## DISCUSSION

The function of appellate review of a criminal proceeding is to determine whether the record contains any substantial evidence supporting the determination by the trier of

3

fact. Substantial evidence is "evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) As a reviewing court, we presume the existence of each fact the trier could reasonably deduce from the evidence presented at trial. (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.) Also, "[t]he trier of fact, not the appellate court, must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment." (*In re James B.* (2003) 109 Cal.App.4th 862, 872.)

**1. There was Sufficient Evidence Appellant was in a Public Place.**

On the issue of the public nature of the parking lot in this matter, the trial court made the following observation: "First of all, while it seems as though, because the garage was private, that it wasn't in the public place, and I can see why the minor might have felt that this argument would carry weight. However, there is a specific provision in the jury instruction 2966 that defines a public place and it says as used here, a public place is a place that is open and accessible to anyone who wishes to go there. So in this particular case, we know that it's open and accessible because when the officers came across a bunch of minors who were at that table with the alcohol, they ran away and they could get away, because the place, the garage was open and accessible. [¶] And when the minor and his friend were coming towards the officers, they were coming off the street to the garage. Again, it wasn't locked; it was open and accessible. So I think the People have proved that this was a public place, under the definitions that are in the jury instructions, that the Court could consider."

The particular facts of the case determine whether the location is a public place. (*People v. Cruz* (2008) 44 Cal.4th 636, 674.) California courts interpreting a statute that applies to conduct in a "public place" usually conclude this element is proven if the site is

4

" ' "readily accessible to all those who wish to go there . . . ." [Citation.] The key consideration is whether a member of the public can access the place "without challenge." [Citation.]' " (*People v. Strider* (2009) 177 Cal.App.4th 1393, 1401 (*Strider*).) Our Supreme Court determined a barber shop qualified as a public place. (*In re Zorn* (1963) 59 Cal.2d 650, 652 (*Zorn*).) Relying on the notion of accessibility developed in *Zorn,* the court in *Strider* concluded that "[p]laces of business *and parking lots on private property*, open to the general public, have consistently been held to be public places." (*Strider, supra,* 177 Cal.App.4th at p. 1402, italics added.)

The front yard of a person's home was deemed a public place when a defendant was arrested for public intoxication. (*People v. Olson* (1971) 18 Cal.App.3d 592.) "[T]he area outside in the front of [the witness's] house, whether it be the driveway, lawn or front porch, . . . was a public place within the meaning of section 647, subdivision (f). . . . Inasmuch as defendant, a complete stranger to [the witness], was able to walk through the outside area of her home to the front door without challenge . . . can hardly [deny] the area is open to 'common' or 'general use.' " (*Id.* at p. 598.)

In *People v. Perez* (1976) 64 Cal.App.3d 297, an apartment hallway was a public place in a Penal Code section 647, subdivision (f) prosecution. It was found to be readily accessible because "[t]here were no locked gates or doors to keep the public from entering. Hallways and stairways of multiple dwellings are open to delivery men, service men, solicitors, visitors and other strangers . . . ." (*Id.* at p. 301.) Other cases have deemed private driveways and like areas to be "public places" because, though on private property, they are readily accessible to the public and lack any physical barrier to entry. (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 319; *People v. Jimenez* (1995) 33 Cal.App.4th 54, 57-60. )

Courts have determined particular places are not "public places" where the site is physically inaccessible to the public due to full fencing surrounding the property or a

5

locked gate precluding public entry. (See *People v. White* (1991) 227 Cal.App.3d 886, 892; *People v. Krohn* (2007) 149 Cal.App.4th 1294, 1299.)

The court below found the parking lot here to be a public place. The evidence supports that legal conclusion. Officer Freitas observed appellant and his girlfriend walking from the public sidewalk into the open parking lot. While the lot was part of a private business, it had no gate or obstruction preventing public access. Inside the lot, the officer saw evidence of a gathering involving alcohol with bottles and a table set up in the area. Others were seen running from the scene as police units arrived. Indeed, Freitas was able to drive his police car into the lot from the public street without any restriction or difficulty.

Appellant makes much about the presence of the sign on the lot referencing Vehicle Code section 22658, subdivision (a), permitting the owner to tow any illegally parked vehicles. However, such signage is not a "barrier" to the public preventing enforcement of public intoxication laws. The sign is not a locked door or a high fence enclosing the entire area. The sign did not prevent appellant from parking in the lot nor did it serve to exclude others reveling in the area. There was no physical challenge to entry in this case.

The key case appellant relies on is *In re R.K.* (2008) 160 Cal.App.4th 1615, 1622, where a woodshed located on private property was deemed not a public place. However, in that case, the court distinguished common areas that are public within a person's home such as driveways, lawns, and porches. (*Id*. at pp. 1620-1621.) While the latter features of a home can be deemed "public places" in many cases, a woodshed building is akin to a private area. The woodshed in question was removed from these "common" areas and was located 10 to 15 feet away from the house. It was not part of the property where members of the public like solicitors, mail carriers, and other delivery persons would go to access the front door of the home. The home itself was not a commercial business. We know the private area around one's home enjoys greater privacy than a business

6

operation open to the public. Indeed, the court in *In re R.K.* acknowledged the distinction when it found the woodshed building not a place of common access while driveways, front lawns, and parking areas are "public" areas of a private home. (*Id.* at pp. 1620-1621.)

We conclude the parking lot here is an area without any demonstrable barriers to the public. It is a feature of a commercial business. The warning sign alone did not defeat the public nature of the property for our purposes here. We find sufficient evidence appellant was in a public place for purposes of Penal Code section 647.

**2. There was Sufficient Evidence Appellant was Unable to Exercise Care for His Own or Others' Safety.**

The second evidentiary challenge by appellant focuses on the finding by the court the minor was unable to care for himself or the safety of others. The trial court found: "I think under the totality of circumstances, given the conduct of the minor, who was belligerent with the officers, the fact that there was a positive PAS result, and indicating the presence of alcohol at the level that was admitted by the People. And . . . the fact . . . the minor appeared to the officers to be returning to the garage to get his car. And he had the keys on him. And his eyes were watery and bloodshot, or red. And I believe there was some testimony . . . his gait, while not pronounced, that it did appear to be somewhat unsteady. . . . I think under the totality of circumstances that the People have proven . . . the minor was unable to exercise care for his or—his own safety or the safety of others. And . . . he was under the influence while in a public place and he was willfully under the influence of alcohol."

In his opening brief, appellant concedes an intoxicated person behind the wheel of a car posses a greater danger to himself or another person than the same individual sitting on a bench. (*People v. Lively* (1992) 10 Cal.App.4th 1364, 1372-1373.) While it is correct appellant was not at the time of arrest behind the wheel of a car, to Officers Valencia and Freitas, he was preparing to leave the lot with his friend in a car he had the

7

keys for. He was uncooperative with the officers regarding the operation of the vehicle. He had physical evidence of intoxication and a positive PAS result. If driving a car in such a state would be a danger to one's self and others, certainly the plan to leave the lot driving the car with these facts stated by the trial court is adequate proof of public intoxication.

The evidence produced at trial and the ruling of the court is sufficient to sustain the prosecution's burden here.

<h1 style="text-align:center">DISPOSITION</h1>

Based on our review of the issues in this appeal, we affirm the judgment of the trial court.


_____

Dondero, J.


We concur:


_____

Humes, P.J.


_____

Margulies, J.