[Crim. No. 19331. Second Dist., Div. One. July 6, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DONA OLSON, Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, and Loren Mandel, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Herbert A. Levin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—Defendant was charged with possession of heroin (§ 11500, Health & Saf. Code.) Her motion to suppress evidence pursuant to section 1538.5, Penal Code, was denied. Thereafter she entered a plea of guilty to the charge. Her appeal is from order granting probation after a plea of guilty based upon denial of motion under section 1538.5.

In the evening of June 17, 1970, Mary Voisan went to her door in response to a ring and saw defendant holding a map; defendant asked for a man by name; she told defendant no one by that name lived there. Defendant appeared to be drunk; she swayed and her speech was slurred. Mrs. Voisan had difficulty understanding her. While defendant had no odor of alcohol on her breath, Mrs. Voisan formed the opinion she was unable to care for herself and offered her the use of the telephone to call a friend. Defendant declined then staggered away and barely made it to her car which was parked in front of Mrs. Voisan's house about 30 to 40 feet from the front door. Mrs. Voisan did not think defendant was fit to drive and did not want her to hurt herself or anybody else; she called defendant back and asked her whether she would like to use the phone. Defendant staggered back into the house, dialed the telephone several times but received no answer, sat down at the kitchen table, laid her head on the table and went to sleep. Two minutes later Mrs. Voisan called the police and told them what had happened, she wasn't capable of taking care of her and did not know what to do with defendant. She testified she called police "because [she] couldn't help the girl. [She] didn't know what to do to help the girl, and [she] felt the girl needed help." Asked on cross-examination, "You wanted to see if she could be taken to a hospital or taken home," she

replied, "Anywhere, yes; but I couldn't help her." She did not tell police she wanted them to arrest defendant.

The officers arrived 10 or 15 minutes later and Mrs. Voisan repeated to them the foregoing; she said she could not help defendant and that they should take over. Officer Hilton observed defendant seated at the kitchen table; she appeared to be passed out or asleep and did not move; he went over to her to ascertain what was wrong and talked to her for a minute but was unable to get any response, then raised his voice and moved her shoulder; she started to regain consciousness; he asked her to stand and she held on to the table and pushed herself up to an upright position; he asked her to identify herself then to step out of the house with him; she did not identify herself but followed the officers. Outside in front of the residence the officers started to talk to defendant; defendant appeared to be under the influence of something. Officer Hilton tried to ascertain what it was and the extent of her influence. First he thought it was alcohol but after checking her breath found no odor of alcohol; upon examination of the pupils of her eyes he determined they were not dilated to any great extent but were larger than normal; as she left the house she staggered and either he or his partner steadied her for he was afraid she was going to fall. Officer Hilton then determined defendant was unable to care for herself and asked whether she would perform a field sobriety test—on the heel and toe test she took several steps but walked in a normal manner and did not place the heel to the toe of either foot; on the balance test she briefly lifted one foot off the ground and replaced it. On the basis of his observations, her manner of walking and her performance of the balance and coordination test he formed the opinion defendant was intoxicated and unable to care for herself, placed her under arrest for violation of section 647, subdivision (f), Penal Code, and transported her to the station where she was booked. Pursuant to the booking-searching procedure a matron took her purse, dumped out the contents and found two bindles of heroin.

In denying the motion to suppress, the judge, among other comments, said that Mrs. Voisan tried to help defendant but when she passed out on the table the only thing she could do was to call for police help; she had the right to ask the officers to remove defendant from her home when it became obvious she could not help her, and it was the officers' duty to do so; Officer Hilton asked defendant to go outside, not for the purpose of arresting her or to get her in a public place to arrest her under section 647, subdivision (f), but to assist Mrs. Voisan in removing her from the premises; when the officers got defendant outside and observed her appearance and conduct they formed the opinion she was under the influence and had a right to make the arrest. The court found that no arrest was

made in the house; that the officers did not decide to arrest her until they observed her outside the premises and gave her tests.

 Appellant's contention that she was not "found" in a public place, thus the arrest was unlawful and the search and seizure unreasonable, is without merit. Penal Code section 836, subdivision 1, allows a peace officer to make an arrest without a warrant when he has reasonable cause to believe that a public offense has been committed in his presence. (*People v. Sandoval,* 65 Cal.2d 303, 308 [54 Cal.Rptr. 123, 419 P.2d 187].)

 If the arrest was lawful the search of defendant's person, clearly incident to the arrest (*Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]) and at the time of booking (*People* v. *Wohlleben,* 261 Cal.App.2d 461, 462 [67 Cal.Rptr. 826]) was not unreasonable.

 Section 647, subdivision (f), Penal Code, provides, "Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor:

"(f) Who is found in any public place under the influence of intoxicating liquor, or any drug . . . in such a condition that he is unable to exercise care for his own safety or the safety of others. . . ." Appellant argues that she was invited to enter Mrs. Voisan's home, Mrs. Voisan called police to take her to her home or a hospital and when the officers arrived they "found" her sitting at the kitchen table thus they could not arrest her under *Reinert* v. *Superior Court,* 2 Cal.App.3d 36 [82 Cal.Rptr. 263], and *People* v. *DeYoung,* 228 Cal.App.2d 331 [39 Cal.Rptr. 487]. These cases are inapposite first, because defendant was not arrested inside of Mrs. Voisan's home but by police outside in front of the residence, and the trial judge so found; second, *DeYoung* did not deal with the legality of an arrest (228 Cal.App.2d 331, 337) and *Reinert* held there was no reason to arrest defendant because he was manifesting his behavior in a private place (*Reinart* v. *Superior Court, supra,* 2 Cal.App.3d 36, 40). However, applying the definition of "find" — "to come upon by seeking" (Webster's New Internat. Dict. of the English Language (2d ed., 1936))—to section 647, subdivision (f), Penal Code, appellant argues that the officer "came upon" her "by seeking" in the kitchen of Mrs. Voisan's home, therefore, she was not "found" in a public place and the officers could not arrest her for a violation of the statute. This is contrary to common sense and the purpose of section 647, subdivision (f), for if it were a proper construction, the statute would punish one for how and where he was first observed without regard for what he did previous or subsequent thereto. "Penal Code, section 647, subdivision (f) . . . penalizes the act of *being* in a public place while under the influence of intoxicating liquor . . . [Italics added.]

"[It] punishes him because he appears in a public place while in-

toxicated to the extent he is unable to exercise care for his own safety or the safety of others." (*In re Spinks*, 253 Cal.App.2d 748, 751-752 [61 Cal.Rptr. 743]; *People* v. *Murrietta*, 251 Cal.App.2d 1002, 1004 [60 Cal.Rptr. 56].) The purpose of section 647, subdivision (f), "is to protect the offender himself from the results of his own folly, as well as to protect the general public from the dangers and evils attendant upon the presence of such persons upon the streets and highways and in other public places." (*People* v. *Belanger*, 243 Cal.App.2d 654, 662 [52 Cal.Rptr. 660]; *People* v. *Kelley*, 3 Cal.App.3d 146, 150 [83 Cal.Rptr. 287].)

Appellant says that even if she could have been arrested for violation of the statute for being in a public place while intoxicated, it was unlawful for the officers to take her outside of Mrs. Voisan's house. While it is true that Mrs. Voisan invited defendant into her home to call someone who might come and look after her, by either passing out or falling asleep defendant destroyed Mrs. Voisan's willingness and ability to care for her and, not "capable of taking care" of defendant, she called police. Asked on cross-examination, "You wanted to see if she could be taken to a hospital or taken home," she answered, *"Anywhere;* yes; but I couldn't help her." It is clear that while at first Mrs. Voisan wanted to protect defendant, when defendant became unconscious and the police arrived she withdrew consent previously given to defendant to come on the premises and wanted defendant removed from her home; she was not particularly concerned whether it was to a hospital or defendant's home as long as she was taken away by the officers. The police have lawful authority to aid a citizen in removing someone from his property. (§ 602.5, Pen. Code.) Appellant urges the alternative, that the officers could have taken her to the hospital or could have made arrangements to take her home instead of to the station. This is well answered by the trial judge: "If the officers didn't take the defendant into custody and under 647f, they can do only one of two things —turn her loose which is the very thing I happen to agree with Mrs. Voisan shouldn't be done. They could become a taxi and take her home or call an ambulance and take her to the hospital. I don't think it is unreasonable to do what the officer did under the circumstances."

Once outside, the officers, without regard for what Mrs. Voisan told them, had reasonable cause to arrest defendant. When they arrived they saw defendant either asleep or passed out at Mrs. Voisan's kitchen table; unable to get a response from her, Officer Hilton raised his voice and moved her shoulder whereupon she started to regain consciousness; asked to stand, defendant held on to the table and pushed herself to an upright position. When he asked defendant to step out of the house, she started to stagger and he or his partner steadied her because he was afraid she might fall. When Officer Hilton tried to talk to defendant outside in

front of the residence, she appeared to him to be under the influence of something; not knowing what, he examined her pupils and they appeared to be larger than normal, then asked her to perform balance and coordination tests which she tried but did not do. At this point he formed the opinion that defendant was intoxicated and unable to care for herself and placed her under arrest for a violation of section 647, subdivision (f), Penal Code. The officers had reasonable cause to believe that defendant's behavior fell within the conduct proscribed by section 647, subdivision (f). (*People* v. *Murrietta,* 251 Cal.App.2d 1002, 1003-1005 [60 Cal.Rptr. 56].) ▉ As to the area outside in the front of Mrs. Voisan's house, whether it be the driveway, lawn or front porch, it was a public place within the meaning of section 647, subdivision (f). From the nature of the tests, we may reasonably assume the officers gave them to defendant on a flat area probably on the sidewalk or street. In any event, the front area outside the house meets the definition of "public" for the purpose of section 647, subdivision (f), as stated in *In re Zorn,* 59 Cal.2d 650 [30 Cal.Rptr. 811, 381 P.2d 635], holding that a barber shop is a "public place" under the statute: " ' "Common to all or many; general; open to common use," ' " and " ' "Open to common, or general use, participation, enjoyment, etc.; as, a *public* place, tax, or meeting." ' " (P. 652.) Inasmuch as defendant, a complete stranger to Mrs. Voisan, was able to walk through the outside area of her home to the front door without challenge, it can hardly be denied that the area is open to "common" or "general use." Having reasonable cause to believe that a public offense was being committed in his presence, Officer Hilton was justified in arresting the defendant without a warrant.

In light of the foregoing we deem it unnecessary to discuss the additional point raised by respondent based upon *McDonald* v. *Justice Court,* 249 Cal.App.2d 960 [58 Cal.Rptr. 29].

The order is affirmed.

Wood, P.J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 2, 1971. Peters, J., was of the opinion that the petition should be granted.