[No. B214864. Second Dist., Div. Seven. Jan. 12, 2010.]

In re MIGUEL H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL H., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part B of the Discussion.

1430

COUNSEL

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth C. Byrne and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JACKSON, J.—

## INTRODUCTION

Miguel H. appeals from an order sustaining a petition under Welfare and Institutions Code section 602 after the juvenile court found he possessed tools

to commit vandalism or graffiti (Pen. Code, § 594.2, subd. (a); count 2[1]) and possessed etching cream/aerosol paint container with intent to deface (§ 594.1, subd. (e)(1); count 3). The court placed appellant in the care, custody, and control of the probation department subject to a previous order for community camp placement.

On appeal, appellant challenges the court's finding that he violated section 594.1 by possessing items in a public place with the intent to deface. He also contends the juvenile court failed to calculate his maximum period of confinement or to determine that section 654 barred multiple punishment on the two counts. We agree that the case must be remanded for calculation of appellant's maximum period of confinement and to determine the effect of section 654. In all other respects, we affirm the order.

## FACTS

On September 29, 2008, Anthony France (France), a campus supervisor at Mark Keppel High School, was instructed to go to a specific classroom and find appellant, who had been accused of drawing graffiti on school property. France saw graffiti on a restroom door and similar graffiti inside the restroom. He believed the graffiti was fresh and made with black shoe polish. France found additional graffiti on glass casing located outside the classroom where he went to find appellant.

France asked the teacher if she had let anyone use the restroom. The teacher indicated that she had let appellant, who was not in the class when France arrived, use the restroom. The teacher showed France where appellant sat, and there was similar graffiti on the table. There was also similar graffiti on the classroom chalkboard.[2]

The assistant principal at the school, Chris Takashita (Takashita), asked France to retrieve appellant's backpack. Appellant was brought to Takashita's office. Appellant acknowledged that the backpack belonged to him. He also stated that there was nothing in the backpack that he was not supposed to have. Inside the backpack were black shoe polish, white shoe polish, yellow spray paint, and an etching tool (small blade). Takashita asked appellant if the polish was his, and appellant said yes. Appellant told Takashita he used the polish on his shoes. Takashita found a folder in the backpack with graffiti similar to that found in the school, and appellant acknowledged that the folder belonged to him. No shoe polish was found on appellant's hands or under his nails.

---

[1] Count 1, felony vandalism (Pen. Code, § 594, subd. (a)), was dismissed. All further statutory references are to the Penal Code, unless otherwise noted.

[2] The letters A and E were on the door of the restroom, inside the restroom, on glass casing outside the classroom and on the chalkboard inside the classroom.

## DISCUSSION

A. *Sufficiency of the Evidence That Appellant Violated Section 594.1, Subdivision (e)(1)*

■ Section 594.1, subdivision (e)(1), provides that it is unlawful for any person under the age of 18 years to possess etching cream or an aerosol container of paint for the purpose of defacing property "while on any public highway, street, alley, or way, or other public place, regardless of whether that person is or is not in any automobile, vehicle, or other conveyance." Appellant contends that the finding he violated this statute cannot stand because a school is not a "public place" within the meaning of the statute. We disagree.

Both parties rely on the case of *In re Danny H.* (2002) 104 Cal.App.4th 92 [128 Cal.Rptr.2d 222] in support of their respective positions. In *Danny H.*, decided by Division Three of this court, the minor was found with an aerosol paint can in an area immediately adjacent to a railroad trestle. The trestle belonged to the railroad, but there was no evidence as to the ownership of the land on which the minor was found. (*Id.* at pp. 94, 96.)

The question before the court was whether the offense occurred in a public place within the meaning of section 594.1, subdivision (e)(1). The court found the meaning of the phrase "public place" in section 594.1, subdivision (e)(1), was ambiguous, noting that the statute did not define the phrase, "and the phrase, as a matter of common parlance, bears multiple meanings." (*In re Danny H., supra*, 104 Cal.App.4th at p. 97.) These included governmental locations, places serving the community, and places open to public view. (*Ibid.*)

In accordance with the rules of statutory construction, the court examined both other sections in the Penal Code where the phrase "public place" was used and the legislative history of section 594.1, subdivision (e)(1). (*In re Danny H., supra*, 104 Cal.App.4th at pp. 98, 100.) The court found 24 sections of the Penal Code that used the phrase "public place" or "public places." After reviewing these sections, the court determined that the phrase "public place" was not used in the Penal Code "with a clear and uniform legislative meaning" to help determine the meaning of that phrase in section 594.1. (*In re Danny H., supra*, at p. 100.)

■ The court then conducted an extensive review of the legislative history of the statute. It concluded, "In light of our . . . discussion [of the statute's legislative history], and mindful of the innumerable ways in which spray paint vandalism, and thus the preliminary crime proscribed by section

594.1, subdivision (e)(1), can be committed, we believe the legislative history of that subdivision supports a broad construction of the phrase 'public place' found therein. Accordingly, we reject the notion that whether a place is a 'public place' within the meaning of subdivision (e)(1), is determinable by some bright-line rule, or that a single factor is dispositive, and look instead to the totality of the facts and circumstances presented in the record . . . ." (*In re Danny H., supra*, 104 Cal.App.4th at pp. 104–105.)

Looking at the totality of the circumstances, the court in *Danny H.* found that the railway trestle, which was "unenclosed, visible to the public, and exposed to general view," was a "public place" for the purpose of the statute. (*In re Danny H., supra*, 104 Cal.App.4th at p. 105.) The court noted that the trestle was "readily accessible; no member of the public wishing to access the trestle was prevented from doing so by any physical barrier." (*Ibid.*)

Appellant contends that, unlike the situation in *Danny H.,* he did not possess the spray paint in an open space, but only within the confines of the high school. While this is true, it is only one factor to consider.

▆ We note that Black's Law Dictionary (6th ed. 1990) pages 1230–1231 defines a public place as "[a] place to which the general public has a right to resort; not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private . . . . Also, a place in which the public has an interest as affecting the safety, health, morals, and welfare of the community." A *public* school falls within this definition. It is a place devoted to the use of a segment of the general public, as well as a place in which the public has an interest.

Appellant relies on statutory restrictions on public access to public schools in suggesting that a public school is not a public place. Section 627, subdivision (c), sets out "the intent of the Legislature in enacting this chapter to promote the safety and security of the public schools by restricting and conditioning the access of unauthorized persons to school campuses." Section 627.2 provides that "[n]o outsider shall enter or remain on school grounds during school hours without having registered with the principal or designee, except to proceed expeditiously to the office of the principal or designee for the purpose of registering. If signs posted in accordance with Section 627.6 restrict the entrance or route that outsiders may use to reach the office of the principal or designee, an outsider shall comply with such signs."

■ While access to public schools may be limited, it does not necessarily follow that a public school should not be considered a public place for purposes of enforcement of section 594.1. A public school is "a place which is in point of fact public rather than private." (Black's Law Dict., *supra*, at p. 1230.) It is also a "place in which the public has an interest as affecting the safety, health, morals, and welfare of the community." (*Id.* at pp. 1230–1231.) Keeping public schools free from graffiti and defacement is a matter of public interest.

As noted in *In re Danny H.*, section 594.1 was enacted in part as a response " 'to the serious problem in some communities of graffiti spray painted on walls and other open spaces.' " (*In re Danny H., supra*, 104 Cal.App.4th at p. 101, italics omitted.) " 'The ever-increasing problem of graffiti caused by the use of spray paint cans by minors is evident throughout Los Angeles. Governmental entities and private property owners, as a consequence, are faced with the expense of eradicating the graffiti and restoring the property damaged by the vandals.' " (*Id.* at p. 103, italics omitted.) Clearly, the public has an interest in keeping schools free of graffiti, whether or not members of the public have unlimited access to public school campuses.

In *Reeves v. Rocklin Unified School Dist.* (2003) 109 Cal.App.4th 652 [135 Cal.Rptr.2d 213], cited by appellant, an anti-abortion group brought an action seeking declaratory and injunctive relief when the group was not permitted to register for the purpose of distributing literature to students on a high school campus. (*Id.* at p. 655.) The court held that denying registration did not violate the group's constitutional rights. (*Id.* at pp. 654, 666.) The court relied on section 627.4, subdivision (a), which provides that a principal may refuse to register outsiders if he or she has a reasonable basis for concluding that the outsiders' presence would be disruptive. (*Reeves, supra*, at pp. 657–658.)

While *Reeves* demonstrates that a school official has a right to regulate access by outsiders, it does not follow that the right to limit access to individuals attempting to distribute literature to students would remove a public school from the definition of "public place" in section 594.1. That public access to certain places is restricted to prevent disruption of activities conducted there does not mean that those places should not be protected from graffiti and vandalism.

The other cases cited by appellant do not warrant a different result. In *People v. Jimenez* (1995) 33 Cal.App.4th 54 [39 Cal.Rptr.2d 12], this division discussed the definition of "public area" within the meaning of Health and Safety Code section 11353.6. That section proscribes the sale of a controlled substance within 1,000 feet of a public or private school (*id.*, subd. (b)) and defines that to mean "any public area or business establishment where minors

are legally permitted to conduct business" (*id.*, subd. (g)). The term "public area" is not defined in the statute. The court concluded that a private residential driveway was a public area within the meaning of the statute because "[d]riveways are areas students may pass by or through on their way to and from school, are generally exposed to public view and are generally accessible to persons making deliveries, service calls, and solicitations and engaging in various errands." (*Jimenez, supra,* at p. 60, fn. omitted.)

Appellant argues that because a high school is not "open to 'common' or 'general use' " (*People v. Olson* (1971) 18 Cal.App.3d 592, 598 [96 Cal.Rptr. 132] ["public place" for purposes of § 647, proscribing intoxication in a public place]) or "readily accessible to all those who wish to go there" (*People v. Perez* (1976) 64 Cal.App.3d 297 301 [134 Cal.Rptr. 338] [same]), under *Jimenez* it would not be considered a public area. Appellant misses the point.

■ In construing a statute, our goal is to give effect to the intent of the Legislature. (*In re Danny H., supra,* 104 Cal.App.4th at p. 97.) ■ In defining "public place" or "public area" for the purposes of the Penal or Health and Safety Code sections at issue, our main focus is how best to protect those whom the statutes are intended to protect. The accessibility to such areas by the general public is not an overriding factor. In *Jimenez*, the most important factor was that the *students* had access to private residential driveways and could be exposed to the sale of controlled substances in those locations.

■ Thus, that the general public does not have unrestricted access to school campuses does not preclude a finding that they are public places within the meaning of section 594.1. The legislative goal of eliminating graffiti and vandalism from publicly and privately owned property is furthered by the conclusion the public schools are public places for purposes of section 594.1, and we so hold. Accordingly, there is sufficient evidence to support the finding appellant violated section 594.1, subdivision (e)(1).

B.   *Calculation of Maximum Period of Confinement and Application of Section 654**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1429.

## DISPOSITION

The order finding counts 2 and 3 true and sustaining the petition under Welfare and Institutions Code section 602 is affirmed. The matter is remanded with directions that the juvenile court calculate appellant's maximum period of physical confinement and exercise its discretion in determining whether the terms of confinement on counts 2 and 3 merge under section 654.

Perluss, P. J., and Woods, J., concurred.

A petition for a rehearing was denied February 3, 2010, and appellant's petition for review by the Supreme Court was denied April 28, 2010, S180424. Kennard, J., was of the opinion that the petition should be granted.