Filed 4/27/16  P. v. Barrow CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ASA BARROW,<br><br>    Defendant and Appellant. | A146075<br><br>(Contra Costa County<br>Super. Ct. No. 051405158) |

Appellant Asa Barrow challenges his July 2015 probation revocation on the ground that the condition he was found to have violated, which prohibited him from "being in the public" with two specified persons, was unconstitutionally vague and therefore could not serve as a basis for finding him in violation of his probation.  The appeal is authorized by Penal Code section 1237[1] and rule 8.304 of the California Rules of Court.

We shall affirm the order revoking probation.

<h3 style="text-align:center">FACTS AND PROCEEDINGS BELOW</h3>

*The Underlying Conviction*[2]

On February 4, 2014, Richmond police officers observed appellant standing next to a green Ford Explorer in front of 2812 Rollingwood Drive, the home of his grandmother, Hazel Norris, at which he had previously resided.  The officer observed

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The facts regarding this conviction are taken from the report of the probation department.

1

appellant approach another vehicle and lean into the open passenger-side window, conducting what they believed to be a narcotics transaction. When the officers approached appellant, they observed green buds in his hands, and after they handcuffed and searched him they found a loaded .38 caliber revolver, approximately 35.2 grams of marijuana, and approximately 20.9 grams of methamphetamine. The police also arrested the two minors, Roderick A. and Michael B., who were seated in the Ford Explorer. A search of the vehicle disclosed a digital scale with marijuana leaves around it, and a loaded Mini-14 assault rifle with one round chambered.

Appellant admitted ownership of the drugs but denied selling them, claiming they were for personal use. He also denied ownership of the revolver he possessed and denied any knowledge of the assault rifle found in the Explorer. A search of appellant's phone disclosed a photo of the rifle and text messages regarding the sale of marijuana. The police also obtained access to appellant's Instagram account, which contained photos of an assault rifle and marijuana and references to marijuana sales.

Appellant was convicted by a jury of five counts of possession of marijuana or methamphetamine while armed with a revolver or rifle (Health & Saf. Code, § 11370.1, subd. (a)).

After conviction, appellant submitted a sentencing memorandum requesting probation which proposed that he participate in three substance abuse treatment and reentry programs: Narcotics Anonymous (NA), Rubicon, and a program sponsored by the Office of Neighborhood Safety (ONS). The memorandum also proposed that if the court suspended a prison term and granted probation, appellant "would also be monitored closely with the understanding that if he violates probation he would be sent to prison."

The district attorney opposed probation and proposed a three-year prison term, due to appellants "drug enterprise," possession of firearms, and use of minors to sell narcotics.

Noting the seriousness of appellant's criminal conduct, the court emphasized his use of Instagram "to market his drug supply and make it available for sale . . . [and] to bolster his reputation as a legitimate illegal drug salesman with the resources and the

2

weapons available to him to be taken seriously in the underworld of narcotics transactions." The court also observed appellant's criminal history, unwillingness to accept full responsibility, and his poor behavior in county jail. On the other hand, the court also acknowledged appellant's elaborate probation plans and the support he had from family members, his girlfriend, the mother of his children, and from others in the community. Although the court felt appellant's conduct was "worthy of four years in state prison," it would suspend the prison term "because of the work your attorney did, your family did, and possibly a few of the words you said in court today." The court stated it was in agreement setting you up for a prison term "is not what I want to do nor will do at this time. However, I will be suspending more time than the [district attorney] is asking for."

The court set a three-year prison term for count 1, a consecutive eight-month term for count 3, a concurrent three-year term for count 2, and concurrent terms of two years each for counts 4 and 5. The court then suspended the sentence and placed appellant on formal probation for five years.

The terms of probation included that appellant not use or possess narcotics, including marijuana, that he abstain from alcohol, attend a two-week reentry workshop with Rubicon, participate in the ONS program, and attend NA meetings two days per week for one year, as appellant had himself proposed.

Initially, the court also ordered appellant to stay away from Roderick A. and Michael B., the minors he was with when arrested. Appellant objected to this condition because Michael was a cousin of appellant's girlfriend and often served as a babysitter for their children, and because Roderick was a close childhood friend. Defense counsel objected to the stay-away orders, stating that Michael and Roderick "are very close in his daily life," and requiring appellant to stay away from them "would be setting him up for failure. They're like his family to him." The district attorney pointed out to the court "strong evidence that [appellant] was using [Michael] to sell drugs and to possess that weapon." The district attorney allowed that Michael may be related to appellant's

3

girlfriend, but "the purpose of probation [was] to start a new life, to turn over a new leaf, [and] [l]etting him associate with his crime partner in this case seems very unwise."

The court resolved the problem this way: "I'm not going to have a no-contact order. What I would have with both individuals, he cannot be out in public with them. So if they're at his house, right, you know, they need to exchange babysitting, what have you. He doesn't need to be out with them, he doesn't need to be out at night, anyway." The court's minute order states that appellant "may not be out in public with Roderick and Michael"

Near the end of the sentencing hearing the trial court told appellant: "I'm going to write in big letters in this file, 'Defendant violates probation, he is sent to prison.' . . . [¶] Clear as a bell so that when it goes down to probation revocation department, you're selling drugs, you're using, you're doing whatever and not doing the right thing, you're going to state prison."

### The Revocation of Probation

On March 24, 2015, around 9:00 p.m., Detective Michael Ricchiuto was on patrol in the area of 2812 Rollingwood Drive, the address at which appellant had originally been arrested and where he previously lived with a woman he considered his grandmother. He saw appellant in a group of about 10 people standing in a driveway adjacent to the garage door of the residence. Knowing appellant was on probation, Detective Ricchiuto approached appellant and told him he wanted to search him. Appellant indicated he was no longer on probation, stating he "had been out seven months" and "hadn't seen a probation officer yet." Ricchiuto insisted appellant was on probation and subject to search, stepped closer to appellant and directed him to place his hands behind his back, and searched him. The search produced no incriminating evidence. However, Detective Ricchiuto noticed that Michael B. was among the 10 or so people standing with appellant in the driveway. He also "noticed [the] smell of alcoholic beverage on [appellant's] breath."

4

Six days later, appellant submitted a urine sample to Deputy Probation Officer Morillo. The sample tested positive for marijuana, and appellant told Deputy Morillo he had "smoked two to three blunts approximately two weeks ago."

On April 3, 2015, the probation department petitioned to revoke probation, alleging appellant was arrested on March 24, 2015, for violating his probation (§ 1203.2, subd. (a)),[3] based on his testing positive for marijuana and admission to using it. A contested hearing was held on July 24, 2015, at which the court received testimony from Detective Ricchiuto and Deputy Morillo regarding the facts just described. After the People rested, the court asked defense counsel, "Do you have any information or confirmation that the defendant attended ONS, attended the two-week workshop with Rubicon, attended NA meetings? I would like to see proof of those." Counsel was able to provide the court notes drafted by appellant's girlfriend, Marissa Hammond, and a person named Seth Wells, which documented appellant's "whereabouts and reporting as directed during the [probation] period"; but counsel was unable to provide any proof appellant had been attending the programs run by ONS, Rubicon and NA, as ordered.

After discussing the matter off the record with appellant, counsel explained that appellant was unable to attend the ONS program because its location in Central Richmond was dangerous for him to enter because he lived in the Easter Hill neighborhood. Counsel stated that appellant "does have concern for his own safety being in Central Richmond, his family being from Easter Hill, his family members' conduct, apart from his own, making him fear being a target there, and for that reason I know Mr. Barrow's represented that he's also already been a victim of a firearms assault, that

---

[3] This statute allows a peace officer to arrest an individual "[a]t any time during the probationary period . . . if [the] probation officer, or peace officer has probable cause to believe the supervised person is violating any term or condition of his or her probation . . . . Upon such rearrest . . . the court may revoke and terminate [such probation] if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless of whether he or she has been prosecuted for such offenses." (§ 1203.2.)

he had been shot previously, and so this is a sincere concern and fear that he's presenting. It's not just a speculative, abstract fear that's out there." The court noted that this problem had not been mentioned by appellant a year earlier at the sentencing hearing when he proposed participation in the ONS program.

In his closing argument, defense counsel focused on Detective Ricchiuto's testimony that at the time he saw and arrested appellant he was in the driveway in front of the garage door, not near the sidewalk, and this "isn't clearly a public area," and that the court's order only barred contact with Michael B. when he and appellant were "in public together." Citing *People v. Cruz* (2008) 44 Cal.4th 636, 674 (*Cruz*), counsel maintained that a public area is "the area outside a home in which a stranger is able to walk without challenge," and the area in which appellant and Michael were located at the time appellant was arrested and searched was not such an area.[4]

After revoking probation, the court imposed the previously suspended state prison sentence of three years eight months; with appropriate total credits of 482 days. The court did not reimpose the previously imposed fines and fees.

Timely notice of appeal was filed on August 25, 2015.

## DISCUSSION

### I.

"The fundamental role and responsibility of the hearing judge in a revocation proceeding is not to determine whether the probationer is guilty or innocent of a crime, but whether a violation of the terms of probation has occurred and, if so, whether it would be appropriate to allow the probationer to continue to retain his conditional liberty." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 348.) Probation may be revoked on proof by a preponderance of the evidence (*People v. Rodriguez* (1990) 51 Cal.3d 437,

---

[4] Counsel also advanced the argument that Detective Ricchiuto's testimony established only that appellant had a very brief "temporary contact" with Michael B., and that was not enough "to show a willful violation" of the court's no-contact order, as required by section 1203.4. Appellant does not make this argument in our court. Nor does appellant here challenge the technology employed by Deputy Morillo to ascertain that he tested positive for marijuana, as he did below.

6

441), so that evidence insufficient to prove that the probationer committed a criminal offense "beyond a reasonable doubt" may nevertheless be sufficient to support a finding that the terms of probation were violated. (*In re Coughlin* (1976) 16 Cal.3d 52, 57.)

However, the evidence must show that the offending conduct constitutes a willful violation of one or more conditions (*People v. Galvan* (2007) 155 Cal.App.4th 978. 982-985), and when it revokes probation the court must make written findings of evidence disclosing the evidence relied upon and the reasons for the revocation or insure that a reporter's transcript contains an oral statement of reasons in lieu of a written statement. (*People v. Vickers* (1972) 8 Cal.3d 451, 457.)

Appellant's sole contention on appeal is that the associational condition he was found to have violated is unconstitutionally vague in that it was not sufficiently precise for him to know what is forbidden and for the court to determine whether he violated the condition. Before addressing that issue, however, we must address the Attorney General's threshold claim that the constitutional challenge is untimely.

## II.

The general rule is that "an appealable order that is not appealed becomes final and binding and may not subsequently be attacked on an appeal from a later appealable order or judgment." (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421, citing *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150; § 1237, subd.(a).) As will be seen, the parties' disagreement about the timeliness of this appeal arises from their different views of (1) the scope of the opinion in *In re Sheena K.* (2007) 40 Cal.4th 875 (*Sheena K.*), and (2) whether appellant's constitutional challenge is based upon a facial defect.

*Sheena K.* involved a juvenile convicted of misdemeanor battery placed on probation subject to a condition that she not associate with anyone disapproved by the probation department. The Supreme Court found that the defendant's failure to raise the issue at the time the challenged condition was imposed did not require her to forfeit her claim that the condition was unconstitutionally vague and overbroad. As the court explained, "[i]n common with a challenge to an unauthorized sentence that is not subject to the rule of forfeiture, a challenge to a term of probation on the ground of

7

unconstitutional vagueness or overbreadth that is capable of correction without reference to the particular sentencing record developed in the trial court *can* be said to present a pure question of law. Correction on appeal of this type of facial constitutional defect in the relevant probation condition, similar to the correction of an unauthorized sentence on appeal, may ensue from a reviewing court's unwillingness to ignore 'correctable legal error.' " (*Sheena K., supra*, 40 Cal.4th at p. 887, quoting *People v. Welch* (1993) 5 Cal.4th 228, 236.)

The Attorney General relies upon a caveat to the rule articulated in *Sheena K.* After concluding that the defendant's claim that her probation condition was vague and overbroad was not forfeited by her failure to raise it in the juvenile court, the unanimous opinion in *Sheena K.* cautioned that "our conclusion does not apply in every case in which a probation condition is challenged on a constitutional ground. As stated by the court in [*In re Justin S.* (2001) 93 Cal.App.4th 811], we do not conclude that 'all constitutional defects in conditions of probation may be raised for the first time on appeal, since there may be circumstances that do not present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." [Citation.] In those circumstances, "[t]raditional objection and waiver principles encourage development of the record and a proper exercise of discretion in the trial court." [Citation.]' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.)

The Attorney General maintains that appellant's challenge falls within the exception to the rule carved out in *Sheena K.* because, unlike the defendant in that case, appellant's challenge to the probation condition is *not* facial but "as it applies to him," and therefore cannot be adjudicated without reference to the facts and circumstances disclosed in the record.

According to the Attorney General, appellant's challenge is analogous to that in *People v. Kendrick* (2014) 226 Cal.App.4th 769. The defendant in that case, who was found guilty of two counts of committing a lewd act on a child, was placed on probation with a condition that he not subscribe to or have access to any form of Internet service without the approval of his probation officer. Kendrick did not object to the condition

8

when it was imposed. Subsequently, his probation was revoked for violation of a different condition but reinstated on the same conditions initially imposed, and again, he did not object to any condition. Two years later, the probation department found that Kendrick had Internet access and was using it to contact an adult female with whom he intended to pursue a relationship. On appeal, Kendrick argued for the first time that the condition restricting his Internet usage must be vacated because it is "constitutionally overbroad." The Court of Appeal concluded that this claim could not be resolved " 'without reference to the particular sentencing record developed in the trial court [and thus does not] present a pure question of law.' " (*Id*. at p. 777, quoting *Sheena K., supra*, 40 Cal.4th at p. 887.) As the court explained, Kendrick's claim that the condition was constitutionally overbroad was based on the assertions that it was not narrowly tailored to his conviction nor reasonably necessary to his rehabilitation or to protection of the public, because there was no evidence he had ever used the Internet for any criminal purpose. As the court noted, "[t]his claim, by its own terms, requires a review of the facts underlying his convictions, facts set forth in the transcript of the preliminary hearing and the probation report." (*Kendrick*, at p. 777.) Kendrick's challenge was also based on testimony that the probation department generally approves Internet usage only if an unemployed probationer is searching for a job. Kendrick argued that because the probation department only approved Internet searches for employment he was prohibited from " 'lawful and benign uses of the Internet,' " which was " 'an excessive deprivation of his liberty and violated First Amendment rights.' " (*Id*. at p. 778.) As the court observed, this argument also showed that Kendrick was not advancing a facial challenge to the condition.

The Attorney General maintains that "[a]appellant's as applied" challenge is nearly identical to what was considered in *Kendrick* and is precisely the type of challenge that does not fall under the forfeiture exception established in *Sheena K*. The Attorney General says that even though appellant did not advance a vagueness argument during the probation process, his opening brief on this appeal states that " '[r]easonable people could differ if asked whether appellant's position in the driveway of a residence should be

9

considered a "public space," ' " and this constitutes an "as applied" argument because this statement, or "claim," relates to "the specific facts of his case." We disagree.

Appellant's argument entitled "Invalid as Applied," is no more than a five-sentence follow up[5] to his primary contention, which is entitled "Vague Term, 'Public' or 'Public Place,' " and is unquestionably a facial challenge. The reason appellant added his "Invalid as Applied" argument is that the case law typically emphasizes the significance of the factual context in which a vagueness claim is based, because, in the end, " '[W]hether a particular location is a "public space" depends upon the facts of the individual case.' " (*Cruz*, *supra*, 44 Cal.4th at p. 674, quoting *People v. White* (1991) 227 Cal.App.3d 886, 892.)

The underlying concern of the concept of vagueness "is the core due process requirement of adequate *notice*. 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' " (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115, quoting *Lanzetta v. New Jersey* (1939) 306 U.S. 451, 453.) The doctrine applies to the command not just of statutes, but as well to those of probation conditions. (*Sheena K., supra*, 40 Cal.4th at p. 890.) Where a condition of probation requires a waiver of constitutional rights, such as the associational rights at issue in this case, " 'the condition must be narrowly drawn. To the extent it is overbroad it is not reasonably related to a compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights.

---

[5] The *entirety* of appellant's "as applied" argument is as follows: "Even if this associational condition was valid on its face, there was no proof that appellant willfully violated it because its reach or scope is undefined. A reasonable person might readily conclude that it does not prohibit standing on private property and some distance from a public street in the presence of a named other party. Reasonable people could differ if asked whether appellant's position in the driveway of a residence should be considered a 'public place.' Certainly it is sufficiently 'private property' that the public could be excluded from entering the parcel. Accordingly, there was a lack of substantial evidence supporting the conclusion that appellant willfully violated this condition." (Fn. omitted.)

10

(*People v. Mason* (1971) 5 Cal.3d 759, 768 [].).)' (*People v. Burden* (1988) 205 Cal.App.3d 1277, 1279.)" (*People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058.)

Like a vague statute, a vague probation condition does not just fail to provide adequate notice to those who must obey its strictures but also impermissibly delegates basic policy matters to law enforcement officers on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890, citing *People ex rel. Gallo v. Acuna*, *supra*, 14 Cal.4th at p. 1116.)

The Attorney General maintains that "[t]he term 'public' is sufficiently precise that a person of common intelligence would know what conduct was prohibited by a probation condition barring appellant from associating with another individual 'in public.' " The Attorney General concedes there is no "single, unifying definition for what is 'public,' " but believes that poses no problem here. As the Attorney General sees it, all that is required is that the condition be "sufficiently precise" and reasonably specific to give appellant notice of what conduct is prohibited and a probation condition or statute prohibiting certain conduct in public does just that. Accordingly, the condition that appellant not associate with Michael or Roderick in public is not unconstitutionally vague. We do not think the issue is nearly so simple.

As noted in *In re Danny H.* (2002) 104 Cal.App.4th 92, the meaning of the phrase " 'public space' " is "ambiguous . . . and the phrase, as a matter of common parlance, bears multiple meanings. The word 'public,' as an adjective, includes such meanings as 'of or relating to government,' 'of, relating to, or being in the service of the community or nation,' 'of or relating to people in general[,]' 'general, popular,' 'of or relating to business or community interests as opposed to private affairs[,]' 'accessible to or shared by all members of the community,' and 'exposed to general view: open.' " (*Id*. at p. 97.)

Due to the ambiguity of the word "public" or phrase "in public," courts have found it useful to instead refer to a particular type of "public place," such as a restaurant (*People v. Nguyen* (2015) 61 Cal.4th 1015), or a particular type of "public area," such as a parking lot adjacent to a market (*People v. McDonald* (2015) 238 Cal.App.4th 16), or a park established "for the enjoyment of the community in general" (*Spires v. City of Los*

*Angeles* (1906) 150 Cal. 64, 65-66), or a public place *known* by a probationer to be a place at which gang activity takes place. (*In re H.C.* (2009) 175 Cal.App.4th 1067, 1072.) Unfortunately, the words of the probation condition at issue here do not similarly limit or clarify the meaning of the word "public" the trial court had in mind.

California courts have, however, routinely held that "privately-owned property can constitute a public place." (*People v. Tapia* (2005) 129 Cal.App.4th 1153, 1161, citing *In re Danny H.*, *supra*, 104 Cal.App.4th at pp. 104-105.) Where, as here, the inquiry relates to an area adjacent to a residence, the judicial focus is whether the area is one "in which a stranger is able to walk without challenge." (*Cruz, supra*, 44 Cal.4th at p. 674; *In re Miguel H.* (2010) 180 Cal.App.4th 1429, 1443; *People v. Krohn* (2007) 149 Cal.App.4th 1294, 1298; *People v. Olson* (1971) 18 Cal.App.3d 592, 598.) As earlier noted, at the sentencing hearing, and just before revoking appellant's probation, the court indicated it had read the opinion in *Cruz* and was aware of the statement therein just quoted.

The Attorney General's assertion that "[t]he term 'public' is sufficiently precise that a person of common intelligence would know what conduct was prohibited by a probation condition barring appellant from associating with another individual 'in public,' " cannot be squared with the case law.

The Attorney General also fails to explain, and we do not see, how appellant's vagueness claim is "fact-driven," in the sense that it cannot be resolved without reference to the particular sentencing record developed in the trial court. Appellant's claim, which seems to us the same as that in *Sheena K.*, is essentially that the challenged order—that appellant "may not be out in public" with Roderick A. and Michael B.—was not " 'sufficiently precise for [him] to know what is required of him, and for the court to determine whether the condition has been violated." (*Sheena K., supra*, 40 Cal.4th at p. 890.) Appellant maintains, in other words, that the word "public" and the phrase "in public" are abstract concepts capable of different meanings; not just in the circumstances

of this case but in numerous other contexts. The constitutional vagueness of this concept is a matter we could decide as a pure issue of law, and this appeal is therefore timely.[6]

However, the fact that we could decide appellant's constitutional claim, which permits us to address all of the issues this appeal presents, does not mean we are required to address the constitutional claim, which is far more knotty than the Attorney General appears to appreciate. We decline to decide this appeal on the basis of the constitutional claim because even if the challenged probation condition is unconstitutionally vague, as it may well be, the defect is not prejudicial. The trial court revoked probation on several other grounds that are not challenged and amply support the trial court's decision to revoke probation.

### III.

The Attorney General maintains that even if the court erred in conditioning probation on not being in public with Michael B., "any error would be harmless because the trial court would have revoked probation based on appellant's drinking alcohol and smoking marijuana." According to the Attorney General, "[g]iven the court's clear statements at appellant's initial sentencing and probation violation hearing, it is beyond a reasonable doubt that the court would have revoked probation even without considering appellant's violation for associating with Michael B. in public. Appellant was convicted of a serious drug-related crime, and the court made clear that appellant was not to use any alcohol or narcotics. The court also based its initial decision to grant probation on appellant's proposed reentry and reengagement plan, which included substance abuse treatment programs and other reentry programs appellant promised to complete. At the time of the probation violation hearing, appellant had participated in no treatment programs and had been using alcohol and marijuana. The court's decision to revoke

---

[6] Respondent's contention that this appeal is untimely is also based on the holdings of *Ramirez, supra*, 159 Cal.App.4th 1412 and *In re Shaun R*. (2010) 188 Cal.App.4th 1129 and, to a lesser extent, the opinions in *People v. Vest* (1974) 43 Cal.App.3d 728 and *People v. Glaser* (1965) 238 Cal.App.2d 819. These cases all involve unusual facts not present in this case and are therefore inapposite.

13

probation was not based solely, or even mainly, on appellant's violation for associating with Michael B. Like in [*People v. Arreola* (1994) 7 Cal.4th 1144], substantial evidence other than that challenged by appellant supports the [probation] violation and subsequent revocation and it is beyond a reasonable doubt that the court would have done so even without considering appellant's associating with Michael B. in public."

Appellant considers the Attorney General's argument "rank speculation." According to appellant, "it is unlikely that a single dirty test involving marijuana smoked two weeks prior to contact with law enforcement would, alone, have triggered a revocation and state prison term. More likely than not, appellant might have been given some additional local custody time, been scolded and then reinstated on probation. There was no solid proof of alcohol consumption or of any significant amount. No intoxilyzer was administered nor any blood sample taken. So the [Attorney General's] statement, 'The court's decision to revoke probation was not based solely, or even mainly, on appellant's violation for associating with Michael B.' cannot be supported by the required level of proof beyond a reasonable doubt. Absent solid proof of some serious or related criminal violation, it is more probable that the court would have exercised its enlightened discretion in the direction of keeping this young black man out of prison and able to get meaningful help in turning his life around."

The Attorney General's argument is far stronger than that of appellant, which we think ignores the views of the trial court expressed at the sentencing and revocation hearings.

At the initial sentencing hearing, after the court announced its willingness to grant probation over the strong opposition of the district attorney, the trial court told appellant how difficult it was to grant him probation in light of the seriousness of his crime, and how certain appellant should be that any violation of any condition of probation would result in his imprisonment for five years; which was one year more than the district attorney sought, in order to provide appellant an even greater incentive to change his behavior. As the court emphatically stated: "I'm going to write in big letters in this file, 'Defendant violates probation, he is sent to prison.'. . . [¶] Clear as a bell so that when it

14

goes down to probation revocation department, you're selling drugs, you're using, you're doing whatever and not doing the right thing, you're going to state prison."

Nearly a year later, at the revocation hearing, the disappointed court made good on its promise. After determining that the driveway in which appellant was found with Michael B. and others was "in what I define as a public place," the court made an extended statement about the many other reasons it felt compelled to revoke appellant's probation. The court noted that appellant "chose to lie about his probation status" to Detective Ricchiuto, and "was clearly consuming alcohol on that day." The court also reminded appellant that at the time of sentencing, "I was very much on the fence. It was a very difficult case, to me, to sentence because the actions and the behavior certainly justified state prison." The court also emphasized a significant factor appellant now completely ignores: that the court's decision to grant probation was perhaps most heavily based on the probation conditions that appellant himself proposed; that he would "attend [NA], Rubicon, and ONS." The decision to grant probation appears to have been primarily based on the court's hope and belief these programs would enable appellant "to step aside from the friends and the behaviors that he was demonstrating, and change, as he promised he would." The court appeared deeply affected by appellant's complete failure to participate in any of the reentry and rehabilitation programs he had himself proposed. As the court stated, "almost exactly 11 months after sentencing—he's done nothing. And the only parts that have come to the attention of the court is that he's smoked marijuana and drank alcohol. Hasn't done a thing to better himself."

Appellant's theory that, but for the violation of the associational condition, the court would have "exercised its enlightened discretion to keep him out of prison and able to get meaningful help in turning his life around," is not just speculative but fanciful. Accordingly, the trial court's decision to revoke probation did not constitute error even if the associational condition imposed on appellant was impermissibly vague.

## DISPOSITION

The order revoking probation is affirmed.

15

 

                                      _____

                                      Kline, P.J.

We concur:

_____
Richman, J.

_____
Stewart, J.

*People v. Barrow* (A146075)